GEORGIA,
Chatham Co.
JULY, 1809.

Ross
vs.
Grimball.

*Minutes of Superior Court, letter G. p. 229.*

*Chambers, July* 12, 1809.

FRANCIS ROSS *vs.* PAUL GRIMBALL.

IN EQUITY.

By *Charlton*, Judge.

THE bill states, that *Francis Ross* and *Paul Grimball* having entered into articles of agreement for the purchase of a tract of land in Liberty County, called *Woodville*, circumstances intervened subsequent to the execution of the agreement, from which *Ross* thought himself delivered from a specific performance of it ; that *Paul Grimball* filed a bill on the equity side of the Superior Court, for a specific performance of it, and in March Term, 1807, obtained a decree, from which *Ross* appealed ; that the case came on again on the appeal in the last March Term, when the jury returned the following verdict, in favour of the respondent *Grimball :* "We find for the plaintiff eight thousand dollars, with interest from the 25th day of April, 1807, and costs of suit, and that the plaintiff cause good and sufficient titles to be made in sixty days." That in pursuance of this verdict *Grimball* left with *Ross*, sometime in April, titles executed by him and his wife to the *Woodville* tract of land ; that upon this verdict, an execution has been issued ; that since the obtainment of the said verdict the complainant *Ross* has discovered that judgments have been entered up against *Grimball* in the circuit court of the *United States* for the district of Georgia, before the date of the said verdict, for the sum of 6714 dollars 28 cents ; that the lien which these judgments fixed upon the *Woodville*, previous to the verdict, prevents a compliance on the part of *Grimball* with all the requisitions of the verdict, he not being able under these judgments to give good and sufficient titles. *Ross* farther states in his bill, that he was

unapprized of the federal judgments at the time the verdict on the appeal was rendered in favour of *Grimball*, and upon the grounds stated in this abstract of his bill, prays that a temporary master in chancery may be appointed to report to this court, the nature of titles tendered by *Grimball* in compliance with the terms of the verdict; that *Grimball* may be required to indemnify *Ross* against the effects of the said federal judgments; and that an injunction may issue, to stay all farther proceedings on the execution until these things are done. My brother, *Harris*, who argued in support of this bill, contends, that a simple title from *Grimball*, with the usual relinquishment of dower from *femme*, cannot be considered as the good sufficient titles which the verdict requires to be given. On this point, I perfectly agree with him; a mere naked title from the vendor is not sufficient; the vendee must be put in possession of all the muniments of the estate, by which he would be enabled to make out a regular deduction of title in the action of ejectment. The grantor must either put the grantee in possession of the mesne conveyances, or he must place it within the power of the grantee to recover them. I presume that these propositions are too well established by the principles of law to require further elucidation; I think it reasonable, therefore, that the prayer of the bill, so far as it seeks a postponement of the operation of the execution, until it is ascertained whether the requisitions of the verdict have, or have not been complied with by Mr. *Grimball*, should be granted; and I do hereby order and direct, that the clerk of the Superior Court of the county of Liberty, upon whom I shall *quo ad hoc* devolve the functions of master in chancery, do, within eight days from this date, make a report to be deposited with the clerk of the Superior Court of Chatham county, on the nature of the titles tendered by *Grimball* to *Ross*, in pursuance of the verdict, and it is farther ordered, that after levy made, an injunction do issue, to stay and inhibit the sale of the property of *Francis Ross*, until a decision of the court is obtained, upon the filing of this report, and upon a

GEORGIA,
Chatham Co.
JULY, 1809.

Ross
vs.
Grimball.

GEORGIA,
Chatham Co.
JULY, 1809.

Ross
vs.
Grimball.

motion which may then be made for the dissolution of the injunction.

I hope my brother *Noel* will perceive the propriety of my not going into a full investigation of the principles which a court of chancery recognises in decreeing a specific performance of contract; he contended, that the judgments in the circuit court against Mr *Grimball* being posterior to the articles to convey, and the first decree in favour of *Grimball*, these judgments could not, upon the authority of the British adjudications in chancery, defeat the right of *Grimball* to apply for a specific performance. If it should be deemed necessary to investigate the soundness of these decisions, which are founded upon the principle, that where one for a valuable consideration agrees to do a thing, such executory contract is to be taken as done, and that he who made the agreement, should not, by neglecting to perform it, be in a better plight than if he had fairly and honestly performed without delay that which he had agreed to perform. I say, if it is necessary to re-investigate the applicability of the decisions, founded upon this principle to the judicial relations of this country, I conceive it is not competent for me to do so upon the *ex parte* matter of the bill before me ; our judicial system does not seem to me to militate with the adoption of the chancery proceedings of England, and I shall, therefore, feel no difficulty in sanctioning a bill of review, if I should be impressed with the necessity of reviewing or examining a decree made upon a former bill. Before I conclude, I would beg leave to suggest to my brother *Noel*, that the case of Finch *et al. vs.* Earl of Winchelsea, 1 P. Wm. 277, does not seem to go the lengths contended for by him. In that case, a specific performance was decreed by Lord Harcourt, which was confirmed by the house of lords. It is said in Powell, 2. p. 59, that a question there arose before lord *Cowper,* whether the judgment creditors who were *puisne* to the agreement, should be paid their debts ; and his lordship decreed that they should, for the equity to have the agreement performed, was not strong enough to stand in the way of the

creditors who had a lien on the estate. Lord Cowper bottomed his decree upon the *inadequacy* of the consideration paid to the thing purchased ; the doctrine, however, is strongly and unequivocally laid down in the manner stated by my brother, *Noel*, in Peach *vs.* Winchelsea, cited 10 Mod. 468, where it is said, that articles entered into for the sale of the debtor's lands for a valuable consideration, and the money paid bind the estate in equity, and therefore must prevail against the claim of my judgment creditor mesne, betwixt the articles and the conveyance. 2 Powell, 58.

I am not prepared to say that all the decisions of the British court of chancery in the rule of equity, which considers a thing done from the time it ought to have been done, are proper for the adoption of circumstances, through the medium of which, justice and honesty would call for an abrogation of the rule as it bore upon the principles of a particular case. If ever there was a case which required a suspension of the will, it was that of Coss *vs.* Rudebe, 2 Vern. 280, to the authority of which I shall never be persuaded to give my assent, sitting here to distribute justice upon the principles of sound sense and morality, and that honesty which is deducible from natural obligation. I shall not consider myself bound by any precedent violation of these principles. If this case comes before me again in the shape I have suggested, I shall endeavour to give to the whole doctrine, that complexion which may be most suitable to the genius and simplicity of our system of jurisprudence.

*Harris*, for Plaintiff.
*Noel*, for Defendant.